## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CASSANDRA R. WILTZ, et al.,**

      **Plaintiffs,**

      **Case No. 2:24-cv-4000**

   **v.**

      **JUDGE DOUGLAS R. COLE**

**DAVE YOST, et al.,**

      **Magistrate Judge Vascura**

      **Defendants.**

## OPINION AND ORDER

Pro se Plaintiff Cassandra Wiltz is no stranger to the court system. She's previously filed forty-one lawsuits in Ohio state courts and three lawsuits in federal court. She now sues multiple Defendants, alleging that they've committed myriad wrongs against her. Ultimately, though, because all of Wiltz's claims are either barred or fail to state a claim, the Court **GRANTS** Defendants' motions for judgment on the pleadings and motions to dismiss (Docs. 3, 6, 9, 16, 37, 40, 50, 84, 108), and **DISMISSES** Wiltz's Complaint (Docs. 1, 1-1, 1-2, 1-3) as against them. The Court further **DENIES** the OhioHealth Defendants' Motion for Judgment on the Pleadings as to their Counterclaim (Doc. 31), but **WARNS** Wiltz that further attempts to either relitigate the claims dismissed by this Opinion and Order or file new frivolous complaints will result in her designation as a vexatious litigator in the federal courts.

## BACKGROUND

The facts underlying this lawsuit run the gamut. In her 101-page Complaint, Wiltz makes sprawling allegations against several individuals and organizations

both on her behalf and on behalf of her now-deceased partner, Dan Burnett. Her allegations are difficult to parse, but in a nutshell, they seem to fall into three factual categories.

First are the healthcare-related claims Wiltz asserts on her behalf. She alleges that various healthcare entities—Ohio Health Physician Group (OhioHealth), Ohio ENT and Allergy Physicians (Ohio ENT), Central Ohio Skin and Cancer (Central Ohio)—and their respective employees failed to treat her ailments, failed to provide her with medical referrals, removed and replaced medical records from her file, belatedly provided her medical records when requested, fabricated health claims in her medical record, and unlawfully circulated those records. (Compl., Doc. 1, #22–30). She also claims that after she sued some of those entities and employees in state court for the injuries they allegedly caused her, they failed to appear in court or respond to subpoenas. (*Id.* at #25–26, 30–31).

Second are the claims Wiltz asserts on Burnett's behalf as "executor" of his Estate. She alleges that the same healthcare entities and employees listed above provided inadequate medical care to Burnett and "unjustifiably" caused his death. (*Id.* at #47–52; Doc. 1-1, #53). And she seems to blame Burnett's death, at least in part, on Dawn Verzaal[1] (Burnett's daughter) and Gloria Caldwell (Burnett's sister), who Wiltz says made medical decisions for Burnett without legal authority to do so. (Doc. 1-1, #54–56). Wiltz further alleges that Verzaal and Caldwell prevented her

---

[1] Wiltz filed her Complaint against "Dawn Burnett." (Doc. 1, #13; *see also* Doc. 1-1, #54). But Dawn's legal name is Dawn Verzaal. (Doc. 40, #1140 n.1). So the Court will refer to her as "Verzaal."

from seeing Burnett at the hospital and made threatening and racially derogatory comments to her. (*Id.*). Wiltz next complains that various Defendants unlawfully used Burnett's body in the State of Ohio's Body Donation Program and then unlawfully cremated him. (*Id.* at #57–58). And Wiltz adds that Defendants Terrence Flahive[2] and Nickolas McCoy—the administrators of Burnett's Estate—refused to provide her with a copy of Burnett's cremation records. (*Id.* at #58–61).

Third and finally are the remaining (i.e., non-healthcare) claims Wiltz alleges on her behalf. Specifically, she believes that some of the already-mentioned Defendants, along with numerous state-court judges, judicial staff, state officials, and private attorneys, conspired to retaliate against her for filing lawsuits that sought relief for the above-outlined injuries she and Burnett apparently incurred. (*Id.* at #64–80; Doc. 1-2, #81–98).

Because of all that, Wiltz filed this lawsuit, suing numerous Defendants in both their official and individual capacities. (Doc. 1, #1–16). She alleges various claims under 42 U.S.C. § 1983: denial of due process and equal protection under the Fifth and Fourteenth Amendments; denial of access to the courts and retaliation under the First Amendment; failure to investigate her complaints; and civil conspiracy. (*See, e.g.*, *id.* at #46; Doc. 1-3, #100). And she also seems to bring a claim for defamation based on various Defendants "creat[ing] a false public image of her."

---

[2] In the Complaint, Wiltz inaccurately spelled Flahive's first name as "Terrance." (Doc. 1, #13; Doc. 1-1, #58–61, 64).

(Doc. 1-1, #64; Doc. 1-2, #99). Some parts of her Complaint also suggest that she is asserting negligence claims. (Doc. 1, #17–45; Doc. 1-2, #99).

Wiltz's instant allegations, however, don't tell the whole story. To provide a complete picture, the Court must briefly describe Wiltz's rather elaborate litigation history, as many of her present claims have already been well-litigated. By her own admission, Wiltz has filed numerous lawsuits naming many of the same Defendants and raising many of the same accusations she raises here in state court. (*See, e.g.*, Doc. 1, #22, 47, 49; Doc. 1-1, #62–64, 66, 73; Doc. 1-2, #85–86, 92–93). But her admissions on this front are just the start.

As it turns out, Wiltz has filed no less than *forty-one* lawsuits in Ohio state courts. (Doc. 3-8, #257–60). And in each one, the relevant court either dismissed Wiltz's suit or rendered a judgment in favor of the defendant(s). (*Id.* at #257). Wiltz's repeated filings ultimately led Judge Gormley of the Delaware County Court of Common Pleas (a Defendant here) to declare Wiltz a vexatious litigator under Ohio's vexatious litigator statute. (*Id.* at #264–69). In making that determination, Judge Gormley noted that Wiltz had filed "multiple cases" that made "the same frivolous allegations … without any factual basis" and "arguments … not supported by the law." (*Id.* at #265–66).

And there's more. Beyond her extensive state-court practice, Wiltz also has experience with the federal courts where she's previously filed three lawsuits. The first suit named seventy-seven defendants, and, after a year of litigating, the court ultimately dismissed all of Wiltz's claims for lack of jurisdiction. (Doc. 12, #637–39).

4

The second named twenty-five defendants and didn't make it past the magistrate judge's screening; the court, adopting the magistrate judge's report and recommendation, dismissed the complaint for failure to state a claim. (*Id.* at #638, 641). The third named eight defendants (many of whom are also named here), and the court dismissed it for lack of subject-matter jurisdiction. (*Id.* at #638, 645).

With the brief survey of Wiltz's litigation history complete, return to the present action. Here, each of the Defendants—except for Caldwell (who is proceeding pro se) and the Doe Defendants (whom Wiltz has not yet validly served)—have moved either for judgment on the pleadings or to dismiss.[3] (Docs. 3, 6, 9, 16, 37, 40, 50, 84, 108). Each motion offers several alternative reasons why the Court must dismiss Wiltz's Complaint in its entirety. Those arguments range from res judicata to lack of subject-matter jurisdiction to various immunity doctrines to Wiltz's failure to plausibly state any claims, and several other arguments in between. OhioHealth (and its affiliated Defendants) also counterclaimed, requesting that the Court declare Wiltz a vexatious litigator. (Doc. 12, #637–652). And it moved for judgment on the pleadings as to that counterclaim. (Doc. 31).

---

[3] McCoy, who was late-served, recently moved to dismiss Wiltz's Complaint. (Doc. 127). But that motion is not yet ripe for review, so the Court will consider it by separate order. As for the Doe Defendants, the Magistrate Judge gave Wiltz until June 5, 2025, to show cause why the Court should not dismiss the claims against them for failure to effect service. (Order, Doc. 126). But Wiltz did not respond to that Order. In any event, the Court's Opinion and Order is inapplicable to both McCoy and the Does.

Wiltz responded to each. (Docs. 61, 62, 63, 81, 91, 92, 100, 111, 122). And the Defendants replied. (Docs. 71, 75, 76, 77, 83, 99, 103, 104, 114).[4] The motions are thus ripe for the Court's review.

## LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (cleaned up). To make that determination, the Court applies the same standards that govern motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.*

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in [her] favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the

---

[4] Flahive did not reply. But his time to do so under the local rules has passed. *See* S.D. Ohio Civ. R. 7.2(a)(2).

Court must take everything a plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertion[s]" of fact, "formulaic recitation[s] of the elements of a cause of action," and "mere conclusory statements." *Iqbal*, 556 U.S. at 678 (cleaned up). And it has limited scope to consider materials outside the pleadings. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023).

Because Wiltz is proceeding pro se, the Court also notes that a pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010).

## LAW AND ANALYSIS[5]

Wiltz has sued numerous Defendants many of whom have self-grouped according to the entities with whom they're affiliated. And each of those Defendant-

---

[5] Throughout this Opinion and Order, the Court references various state-court filings and judgments (which Defendants have attached to their motions). While courts are typically constrained to reviewing only the pleadings when considering a motion to dismiss or motion for judgment on the pleadings, they "may take judicial notice of proceedings in other courts of record." *Dates v. HSBC*, 721 F. Supp. 3d 616, 620 n.1 (S.D. Ohio 2024) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)). Plus, Wiltz references many of the relevant state-court filings in her Complaint, which itself allows the Court to properly consider them. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

groups' motions raise some divergent arguments and some overlapping arguments as to why Wiltz's claims against them fail. In an effort to streamline its analysis, the Court takes an argument-based approach, analyzing motions with overlapping arguments together. In so doing, the Court will highlight only the foremost reason Wiltz's Complaint fails—in other words, the Court will not (because it need not) address every alternative argument Defendants raise. But before turning to the Defendant-specific arguments, the Court starts by addressing a global issue: Wiltz's ability to sue on behalf of Burnett's Estate.

## A. Wiltz Cannot Represent Dan Burnett's Estate Pro Se.

The Court isn't entirely clear what claims Wiltz intends to assert on Burnett's Estate's behalf. But ultimately it doesn't matter because all such claims fail for a simple reason: Wiltz cannot represent Burnett's Estate pro se. As many Defendants' motions argue, (*see* Docs. 3, 6, 9, 16, 37, 40, 50), doing so constitutes the unauthorized practice of law. And both federal law and Ohio law are clear that "a *pro se* plaintiff may not represent an estate in litigation where there are estate beneficiaries other than the plaintiff." *Thompson v. THC, Inc.*, No. C-1-07-231, 2008 WL 4449426, at *1 (S.D. Ohio Sept. 30, 2008) (citing *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003)); *see also Heath v. Teich*, 2007-Ohio-2529, ¶¶ 11–12 (10th Dist.).

Here, Wiltz is not the sole beneficiary listed in Burnett's will. As the will from the state probate matter demonstrates, there are other Estate beneficiaries. (*See e.g.*, Doc. 6-11, #451 (directing the Executor of the will to distribute the residue of Burnett's Estate to individuals other than Wiltz)). So, as a non-attorney, Wiltz cannot

represent Burnett's Estate pro se. The Court must therefore dismiss any claims asserted on the Estate's behalf. *Thompson*, 2008 WL 4449426, at *2.

## B. Wiltz Failed to State a Claim Against Poling or Flahive.

The Court understands Wiltz's Complaint to allege two claims against Defendant Brant Poling: civil conspiracy and retaliation under § 1983. (Doc. 1, #14; Doc. 1-2, #81, 83–84, 87). And it seems Wiltz is asserting a § 1983 civil conspiracy claim and various state-law claims (negligence, defamation, and intentional infliction of emotional distress) against Flahive. (Resp. to Show Cause Order, Doc. 93, #3341). None are viable.

Start with Poling. He represented several of the Defendants named in this case in a separate lawsuit Wiltz brought in state court. (Doc. 3, #115). And as competent attorneys are wont to do, Poling zealously defended those clients in that matter. Specifically, he moved for judgment on the pleadings on Wiltz's claims in the state trial court. (Docs. 3-2, 3-3). Wiltz, however, interpreted those filings as Poling's attempt to conspire with Judges David Gormley, Craig Baldwin, Patricia Delaney, and Andrew King (the judges in the relevant state-court matters who are also Defendants here) in retaliation for her filing the case. (Doc. 1, #14; Doc. 1-2, #87).

Putting Wiltz's fanciful rhetoric aside, she has failed to plausibly allege a § 1983 claim against Poling. To do so, Wiltz must allege facts sufficient for the Court to reasonably infer she has suffered a "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of

state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).

Wiltz's problem, however, is that Poling is a private attorney, not a state actor. So as a general rule, "§ 1983 does not reach [his] conduct." *Weser v. Goodson*, 965 F.3d 507, 515–16 (6th Cir. 2020). True, sometimes "private actor[s] may be considered a person acting under color of state law" if their conduct "is fairly attributable to the state." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). Most relevant here, a private actor can be liable under § 1983 if he or she conspired with or "willfully participate[d] in joint action with state agents." *Weser*, 965 F.3d at 516 (quotation omitted).

But that exception doesn't save Wiltz's claims against Poling. Wiltz alleges that Poling filed briefs that "asked" the four Judges to dismiss Wiltz's state-court case in both the trial and appeals courts. (*See, e.g.*, Doc. 1-2, #81, 84, 87). That, however, does nothing to suggest that Poling and the four Judges had a "single plan," "shared [a] general conspiratorial objective," or engaged in any "overt act" to retaliate against Wiltz, all of which are required to plausibly allege a § 1983 civil conspiracy claim. *Weser*, 965 F.3d at 516 (quotation omitted). Indeed, the very point of an attorney filing a motion or brief is to ask the presiding court or judge to do something in a client's favor. Wiltz's "vague and conclusory allegations" are simply insufficient to state a civil conspiracy claim. *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503, 517 (6th Cir. 2020) (quotation omitted).

Turn to Flahive. He briefly served as administrator of Burnett's Estate after Burnett's children contacted Flahive, informed him that Burnett had no will, and requested that Flahive probate Burnett's Estate. (*See* Doc. 1-1, #59; Doc. 108, #3562). Then, after discovering that Burnett did have a will, another attorney, McCoy, stepped in to help Wiltz administer the Estate. (*See* Doc. 1-1, #59).

Ultimately, the same problems that plague Wiltz's § 1983 claims against Poling doom her § 1983 claims against Flahive. At bottom, she alleges that Flahive (along with McCoy and some of the State Defendants) failed to turn over Burnett's cremation records to her. (Doc. 1-1, #59–61). But like Poling, Flahive is a private attorney, not a state actor. And nowhere in Wiltz's six rambling pages of allegations about the records, (Doc. 1-1, #58–64), does she offer any facts from which the Court could reasonably infer that Flahive took part in a single plan, shared a conspiratorial objective, or engaged in any overt act with a state agent to conceal Burnett's cremation records.

As for Wiltz's state-law claims against Flahive, the Court need not reach them. The Court ultimately dismisses all of Wiltz's federal claims, so the Court declines to exercise jurisdiction over her state-law claims. *See* 28 U.S.C. § 1367(c); *see also infra* note 16.

Wiltz has therefore failed to plausibly allege that Poling or Flahive are state actors subject to a § 1983 claim. As a result, the Court must dismiss her claims against them.

C.   **Res Judicata Bars Wiltz's Claims Against the Central Ohio Defendants, the Ohio ENT Defendants, the Ohio Health Defendants, Verzaal, and Caldwell.[6]**

While the Court is unclear precisely what claims Wiltz intends to assert against the Central Ohio Defendants, the Ohio ENT Defendants, the OhioHealth Defendants, Verzaal, or Caldwell, what is clear is that they all fail out the gate. Why? Because Wiltz has already thoroughly litigated her claims against these Defendants, which means res judicata bars her from raising them again here.

"Under the doctrine of res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 414 (6th Cir. 2016) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Federal courts, when analyzing whether res judicata bars a claim, "must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Id.* (quotation omitted). Since the relevant Defendants here argue that two Ohio state-court judgments bar Wiltz's current federal action, the Court looks to Ohio law. And in Ohio, res judicata requires four elements: (1) a final decision on the merits; (2) a prior action involving the same parties (or their privies) as the current action; (3) the

---

[6] The "Central Ohio Defendants" include Central Ohio Skin and Cancer, Ashleigh Briody, and Carl Allen. (Doc. 6, #306).

The "Ohio ENT Defendants" include Ohio ENT and Allergy Physicians, Dr. Jacob Paul Burkhart, Kaleigh Hinton, and Sarah Withers. (Doc. 9, #474).

The "OhioHealth Defendants" include Steve Marcovich, Ohio Health Physician Group, Dr. Candace Martin, Ohio Health Custodian of Records, Ohio Health Corporation, Dr. Chad Michael Miller, OhioHealth Riverside Methodist Hospital, Elizabeth Wipper, Kay Ellen Goodall, Valerie Toivonen, Deborah K. Reynard, and Karen Clouse. (Doc. 50, #1251).

current action raises claims that were or could have been litigated in the first action; and (4) both actions arise out of the same transaction or occurrence. *William Powell Co. v. Nat'l Indem. Co.*, 18 F.4th 856, 869–70 (6th Cir. 2021). The Central Ohio Defendants and the Ohio ENT Defendants point to one state-court judgment as barring Wiltz's claims here. Verzaal points to a second (which applies equally to Caldwell). The OhioHealth Defendants point to both of those judgments (Wiltz sued some OhioHealth Defendants in the first and others in the second). The Court takes each in turn.

Start with the Delaware County Court of Common Pleas order that dismissed Wiltz's claims against the Central Ohio Defendants, the Ohio ENT Defendants, and some of the OhioHealth Defendants. (*See, e.g.*, Doc. 6, #308 (referencing "Exhibit C," which is Doc. 6-3)). That order is plainly a final judgment on the merits, thus satisfying element one. (Doc. 6-3, #376 (noting that the decision was a "final appealable order")). And Wiltz's decision to include a verbatim copy of her state-court complaint as an attachment to her instant federal-court Complaint takes care of the latter three elements. (*Compare* Doc. 1, #15–45, *with* Doc. 6-1, #328–58). Said differently, the state-court complaint named exactly the same Central Ohio Defendants and Ohio ENT Defendants, and some of the same Ohio Health Defendants or their privies (element two); it made exactly the same allegations (element three); and it arose from exactly the same transactions and occurrences (element four). So res judicata bars Wiltz's claims against those Defendants here.

Turn now to the claims against Verzaal, Caldwell, and the remaining OhioHealth Defendants. Verzaal and the OhioHealth Defendants direct the Court to a separate Delaware County Court of Common Pleas order that dismissed Wiltz's claims against Verzaal, Caldwell, and the remaining OhioHealth Defendants. (*See, e.g.*, Doc. 40, #1143 (citing Doc. 3-8)). Like before, that order is a final judgment on the merits. (Doc. 3-8, #269 (noting that the decision was a "final appealable order")). And while Wiltz didn't attach a verbatim copy of this state-court complaint to her instant federal-court Complaint, she did include nearly identical allegations in each. (*Compare* Doc. 1-1, #53–61, *with* Doc. 40-1, #1167–73). In other words, the state-court complaint named the same Defendants—Verzaal, Caldwell, and the remaining OhioHealth Defendants or their privies (element two);[7] raised the same claims (element three); and arose out of the same occurrences (element four). Res judicata thus bars Wiltz's claims against Verzaal, Caldwell,[8] and the remaining OhioHealth Defendants here.

---

[7] Wiltz's state-court complaints admittedly did not name Defendant Karen Clouse. (*See* Doc. 6-1, #328–29; Doc. 40-1, #1150–51). But like Poling (who represented the Ohio ENT Defendants in a state lawsuit), Clouse represented the OhioHealth Defendants in a state lawsuit. (Reply, Doc. 99, #3363). So while res judicata may not bar Wiltz's claims against Clouse—Wiltz didn't sue Clouse or her privy in state court—Wiltz's § 1983 claims against Clouse fail for the same reasons they fail against Poling and Flahive. That is, Wiltz failed to plausibly allege any sort of conspiracy or retaliation, or that Clouse's actions are fairly attributable to the state. *See supra* Part B.

[8] The Court notes that Caldwell, who is proceeding pro se, did not explicitly move for dismissal. Yet, in her answer, she seems to raise the defense of failure to state a claim and asks the Court to "dismiss the case." (Doc. 39, #1132, 1137). Given the overlap in the Court's analysis of how res judicata impacts the claims against Caldwell and those against Verzaal and the remaining Ohio Health Defendants, it would be a waste of judicial resources to allow those same barred claims to advance against Caldwell merely because she had not yet formally moved for dismissal on res judicata grounds. *Cf. Arizona v. California*, 530 U.S. 392, 412 (2000) (explaining that sua sponte dismissal on res judicata grounds is "appropriate in

One other thing bears mention. The Court struggles to read the allegations in Wiltz's current Complaint as asserting any § 1983 claims against the Central Ohio Defendants, the Ohio ENT Defendants, the Ohio Health Defendants, Verzaal, or Caldwell—she seems to allege only negligence and emotional distress. (*See, e.g.*, Doc. 1, #17–45). The civil cover sheet, however, suggests Wiltz is perhaps suing only for alleged § 1983 violations, (*see* Doc. 1-3, #100), and in some of her responses, she declares that she is asserting § 1983 claims, (*see, e.g.*, Doc. 61, #1320).[9] In any event, to the extent Wiltz does attempt to raise a § 1983 claim against those Defendants, they fail for two reasons. First, they're also barred by res judicata. As explained, Wiltz raised the *exact same* or *nearly identical* allegations against these Defendants here as in state court. That, in turn, means she could have litigated any § 1983 claims (which are based on the same allegations) in state court. *Moore, Successor Tr. of Clarence M. Moore & Laura P. Moore Tr. v. Hiram Twp.*, 988 F.3d 353, 361–63 (6th Cir. 2021) (citing *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995)). Indeed, state courts often consider § 1983 claims. *See generally, e.g.*, *Nadra v. Mbah*, 893 N.E.2d 829 (Ohio 2008). Second, for the same reasons discussed above concerning

---

special circumstances," which may include when "judicial resources have been spent" on an issue).

[9] At times, Wiltz seems to raise new facts (or at least apply alleged facts to new Defendants) in her various briefs in opposition. (*See, e.g.*, Doc. 61, #1319 (explaining that facts initially raised against Defendants Poling and Judge Gormley somehow also apply to the Ohio ENT Defendants)). The Court, however, will not consider any facts outside those alleged in the Complaint, nor will the Court credit Wiltz's attempts to apply alleged facts to new Defendants, as that is essentially the same as raising a new claim. *Ault v. Medina Med. Invs., LLC*, No. 1:06-cv-1113, 2007 WL 81853, at *3 (N.D. Ohio Jan. 8, 2007) ("It is axiomatic that a plaintiff cannot add new claims to her complaint in an opposition to a motion to dismiss.").

Poling and Flahive, Wiltz has failed to plausibly allege that any of these Defendants are either state actors or private actors whose conduct is fairly attributable to the state. *See supra* Part B. As such, any § 1983 claims Wiltz asserts against these Defendants necessarily fail.

As the OhioHealth Defendants highlight, appeals included, this is Wiltz's ninth attempt to litigate the same claims against these same Defendants. (Doc. 50, #1256). Bearing in mind that res judicata's "dual purpose[s]" include "protecting litigants from the burden of relitigat[ion]" and "promoting judicial economy by preventing needless litigation," *FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 288 (6th Cir. 2018) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)), the Court warns Wiltz that she may not continue to litigate these claims—state-law or § 1983—against these Defendants. As explained more below, failure to do so will result in a vexatious litigator determination in federal court.

### D. Wiltz's Claims Against the State Defendants and Judge Gormley Fail.[10]

Wiltz has sued the various State Defendants and Judge Gormley in both their official and individual capacities for a host of § 1983 claims. The Court takes the official-capacity claims and individual-capacity claims in turn.

---

[10] The "State Defendants" include Ohio Fifth District Court of Appeals Judges Patricia A. Delaney, Andrew J. King, and Craig Baldwin; Ohio Tenth District Court of Appeals Judges Julia L. Dorrian, Betsy Luper Schuster, and Carly M. Edelstein; Tenth District Court Administrator Doug Eaton; Tenth District Clerk Mekel Harrison; Ohio Court of Claims Judge Lisa L. Sadler; Court of Claims Bailiff Elterrion Batts; former Court of Claims Magistrate Scott Sheets (the Judicial Defendants); Ohio Attorney General Dave Yost, Assistant Attorneys general Brian Kneafsey and Michelle Brizes, and Attorney General's Office Investigator Christina Andrews (the Attorney General Defendants); and Ohio State University Officials Peter Mohler and Danielle Davis (the University Defendants). (Doc. 37, #1077 n.1).

1.    **State Sovereign Immunity Bars Wiltz's Official-Capacity Claims Against the State Defendants and Judge Gormley.[11]**

Wiltz's official-capacity claims against the State Defendants and Judge Gormley fail. That's because suits against state officials in their official capacity amount to suits against the state itself, which state sovereign immunity—as informed by the Eleventh Amendment—bars. *Y.A. by Alzandani v. Hamtramck Pub. Sch.*, __ F.4th __, 2025 WL 1463285, at *3 (6th Cir. 2025) (describing how the "Eleventh Amendment restored" the state sovereign immunity inherent in the Constitution's design).

Here, each of the State Defendants and Judge Gormley fall within sovereign immunity's ambit.[12] Ohio courts of common pleas, courts of appeals, and their employees count as arms of the state. *See Williams v. Parikh*, 708 F. Supp. 3d 1345, 1353 (S.D. Ohio 2023) (citing *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 330–33 (6th Cir. 2022), *aff'd*, No. 24-3059, 2024 WL 5355086 (6th Cir. Sept. 4, 2024) *cert. denied sub nom. Williams v. Clerk, Parikh*, No. 24-6760, 2025 WL 1426726 (May 19, 2025)). So does the Ohio Attorney General's Office and its employees. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 687–88 (1993) (explaining that "agencies acting under [a state's] control" are

---

[11] Wiltz, as part of the relief she requests, asks the Court to issue an "[o]rder compelling defendants to reverse [her] Vexatious Litigator Declaration." (Doc. 1-3, #99). But as several Defendants argue, the *Rooker-Feldman* doctrine plainly bars that request. *Hohenberg v. Shelby Cnty., Tenn.*, 68 F.4th 336, 340 (6th Cir. 2023) (explaining that *Rooker-Feldman* prohibits federal courts from "undo[ing]" or "overturn[ing]" state-court judgments in a new federal-court action (cleaned up)).

[12] While three exceptions to state sovereign immunity exist, *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017), none apply here.

"arms" of that state); *see also* Ohio Const. art. III, § 1 (establishing the Office of the Ohio Attorney General). As do state universities and their employees and officers. *McCormick v. Miami Univ.*, 693 F.3d 654, 661–62 (6th Cir. 2012); *see also* Ohio Rev. Code § 3335 (designating The Ohio State University).

All told, because of the sovereign immunity that the Eleventh Amendment reinforces, the Court lacks subject-matter jurisdiction over Wiltz's official-capacity claims against the State Defendants and Judge Gormley. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

### 2. Immunity Doctrines Bar Wiltz's Individual-Capacity Claims Against the Judicial Defendants, Judge Gormley, and the Attorney General Defendants.

The Court now turns to Wiltz's individual-capacity claims against the State Defendants and Judge Gormley. While the Eleventh Amendment has nothing to say about these claims, other immunity doctrines do.

Start with the Judicial Defendants and Judge Gormley. Absolute judicial immunity bars Wiltz's individual-capacity § 1983 claims against them. "[J]udges and other court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions."[13] *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). All of Wiltz's allegations concerning the Judicial Defendants and Judge Gormley focus on their performance of judicial or quasi-judicial functions. Wiltz alleges, for example, that state-court judges dismissed her claims or denied her

---

[13] Judicial immunity does not apply in two narrow circumstances, neither of which apply here. *Williams v. Taylor*, No. 1:22-cv-769, 2025 WL 410095, at *13 (S.D. Ohio Feb. 6, 2025) (explaining the two exceptions to judicial immunity).

motions, (*see, e.g.*, Doc. 1-1, #67, 70, 76, 78, 80), that court staff failed to provide her court documents she requested, (*see, e.g.*, *id.* at #73, 75–76), and that Judge Gormley declared her a vexatious litigator, (*see, e.g.*, Doc. 1-2, #86). In short, none of her allegations suggest that the Judicial Defendants or Judge Gormley acted outside their judicial or quasi-judicial capacities.[14] As such, judicial immunity bars Wiltz's individual-capacity claims against these Defendants.

Now turn to the Attorney General Defendants. For these Defendants, absolute prosecutorial immunity bars Wiltz's individual-capacity § 1983 claims. When an official engages in activities "intimately associated with the judicial phase" of a criminal or civil process, absolute immunity "shields [the] prosecutor from § 1983 liability." *Cooper v. Parrish*, 203 F.3d 937, 946–47 (6th Cir. 2000) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Activities deserving of protection include "advocat[ing] for the state" and "prepar[ing] for the initiation of judicial proceedings or … trial[.]" *Id.* at 947. Wiltz's claims against the four Attorney General Defendants fall within that scope. Wiltz alleges that Assistant Attorney General Kneafsey, while he "was the attorney" for the Ohio State University Wexner Medical Center in one of Wiltz's state-court cases, failed to produce requested discovery documents. (Doc. 1-1, #65). Based on the allegations, it seems there was perhaps a discovery-related dispute that the state-court judge addressed via a motion to compel discovery directed at

---

[14] True, Wiltz does allege that some of the State Defendants "criminally altered" and "criminally removed" documents in the trial record in some of her state-court cases. (*See, e.g.*, Doc. 1-1, #71–72; Doc. 1-2, #97). But the Court declines to credit those conclusory allegations, for which Wiltz provides no factual support. *Iqbal*, 556 U.S. at 678.

Wiltz. (*Id.*). Kneafsey's decision to litigate a discovery dispute—if that is in fact what happened—fell under his role as the state's advocate, thus entitling him to absolute prosecutorial immunity. *See Lucas v. Moore*, No. 19-4010, 2021 WL 2773936, at *3 (6th Cir. Jan. 20, 2021).

As for Ohio Attorney General Yost[15] and Assistant Attorney General Brizes, Wiltz's allegations seem to revolve around a state-court complaint they filed, which requested that the state court declare Wiltz a vexatious litigator—what Wiltz views as "malicious prosecution." (Doc. 1-2, #88, 92–95). Ultimately, though, choosing to seek a vexatious litigator determination qualifies for prosecutorial immunity. *See Cooper*, 203 F.3d at 948.

That leaves the claims against Andrews, which relate to Andrews' role as a process server for the Attorney General's Office in the vexatious-litigator matter. (Doc. 1-2, #93–94). Because Andrews' activities were an extension of the Attorney General's Office's decision to prosecute Wiltz for vexatious litigation, she too receives absolute prosecutorial immunity. *See, e.g.*, *Maqablh v. Heinz*, No. 3:16-cv-289, 2017 WL 1347695, at *3 (W.D. Ky. Apr. 10, 2017) (collecting cases where prosecutorial immunity extended to "prosecutor[s'] staff for acts committed in the course of their duties as staff of a prosecutor of the state." (cleaned up)). All told, absolute prosecutorial immunity bars Wiltz's individual-capacity claims against the Attorney General Defendants.

---

[15] Wiltz raises other claims against General Yost, (Doc. 1-1, #52, 56, 61, 63), seemingly on behalf of Burnett's Estate, which Wiltz cannot assert pro se, *see supra* Part A.

### 3. Wiltz Failed to Plausibly Allege a Claim Against the University Defendants.

The University Defendants—Mohler and Davis—are not entitled to any sort of immunity when it comes to the individual-capacity claims asserted against them. But that doesn't matter; Wiltz has not plausibly alleged a § 1983 claim against either one.

As for Mohler, Wiltz alleges only that he failed to provide her a copy of Burnett's cremation records. (Doc. 1-1, #58). The Court struggles to discern any § 1983 claim (or non-§ 1983 claim) that might arise from that allegation. Wiltz has pointed to no federal statute or constitutional provision that says failing to turn over a record violates Wiltz's rights. As such, Wiltz has failed to plausibly allege a claim against Mohler in his individual capacity.

Turning to Davis, Wiltz says Davis (along with other Defendants) unlawfully disposed of Burnett's body and refused to turn over Burnett's cremation records, which caused Wiltz "emotional distress." (Doc. 1-1, #52, 56–59). Most of those claims seem to be raised on Burnett's behalf, which, as described above, constitutes the unauthorized practice of law. *See supra* Part A. Beyond that, the Court is again unsure how those allegations support a § 1983 claim. Plus, Wiltz failed to allege facts that support a state-law intentional infliction of emotional distress claim. *See Tuleta v. Med. Mut. of Ohio*, 6 N.E.3d 106, 118–19 (Ohio Ct. App. 2014) (explaining that "bare legal conclusions" of emotional distress will not suffice to state a claim). So Wiltz has failed to plausibly state a claim against Davis in her individual capacity.

**E.** **The City of Delaware Police Department Is Non Sui Juris, and Wiltz Failed to State a Claim Against Wadsworth.**

The Court next considers Wiltz's claims against the City of Delaware Police Department and Officer Brenda Wadsworth. As with the claims above, Wiltz's claims against these Defendants fail.

For starters, the City of Delaware Police Department is non sui juris, meaning Wiltz cannot name it as a Defendant. *See Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006); *see also Lloyd v. City of Streetsboro*, No. 18-3485, 2018 WL 11298664, at *3 (6th Cir. Dec. 20, 2018) (explaining that "under Ohio law, sheriff's and police departments are not entities capable of being sued under § 1983"). So Wiltz's claims against the City of Delaware Police Department fail.

So do Wiltz's claims against Wadsworth. The Court understands the Complaint to allege that Wadsworth (1) refused to file Wiltz's criminal complaint (which apparently highlighted "the many crimes … the State of Ohio and others" committed against Wiltz), and (2) conspired with other to defame Wiltz by "create[ing] a false public image" of her. (Doc. 1-1, #63–64).

As to the first, "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007). And more than that, an officer's failure to "investigate crimes against a person does not state a civil rights claim." *Parker v. Napoleon*, 46 F. App'x 298, 299 (6th Cir. 2002). So Wiltz's first claim against Wadsworth fails as a matter of law.

And as to the second claim, Wiltz did not plausibly allege a civil conspiracy involving Wadsworth. That is, Wiltz did not allege any facts creating a plausible

22

inference of a "single plan," a "shared [a] general conspiratorial objective," or an "overt act" to defame her. *Weser*, 965 F.3d at 516 (quotation omitted). Her second claim against Wadsworth therefore also fails.[16]

## F. The Court Denies the OhioHealth Defendants' Motion for Judgment on the Pleadings as to Its Counterclaim But Warns Wiltz That Future Frivolous Filings Will Lead to a Vexatious Litigator Determination.

As noted, the OhioHealth Defendants counterclaimed against Wiltz asking the Court to: (1) declare her a vexatious litigator under federal law; (2) issue an injunction imposing prefiling restrictions on Wiltz; (3) award the OhioHealth Defendants attorneys' fees; and (4) impose sanctions against Wiltz. (Doc. 12, #651–52). And then they moved for judgment on the pleadings as to that counterclaim. (Doc. 31).

While the OhioHealth Defendants are correct that district courts have "inherent authority to issue an injunctive order to prevent prolific litigants from filing harassing and vexatious pleadings," *Brown v. Foley*, No. 20-3272, 2020 WL 8921407, at *2 (6th Cir. July 27, 2020) (citing *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998)), the Court declines to declare Wiltz a vexatious litigator (or otherwise award fees or impose sanctions) *yet*. True, the Ohio courts have declared her vexatious under Ohio Revised Code § 2323.52. (Doc. 3-8, #268). But it does not

---

[16] As noted at various points throughout this Opinion and Order, Wiltz seems to raise emotional distress, negligence, defamation and libel claims, presumably under Ohio law. (Doc. 1, #47; Doc. 1-3, #99). Because the Court dismisses all of Wiltz's federal causes of action against the Defendants relevant to this Opinion and Order, it declines to exercise jurisdiction over her state-law claims. 28 U.S.C. § 1367(c).

appear that any *federal* courts have yet warned Wiltz that further frivolous filings will result in a vexatious litigator determination.

That said, the Court is troubled by Wiltz's penchant for relitigating claims and subjecting the same defendants to endless rounds of litigation. And the Court has serious misgivings about Wiltz's allegations, all of which appear to be frivolous and no more than an embittered attempt to undo judgments rendered by the state courts. As the OhioHealth Defendants highlight, each of Wiltz's filings unnecessarily "forces the parties and the Court to expend resources" in either responding to or ruling on Wiltz's claims. (Doc. 31, #1032). And given the volume of Wiltz's filings, that is no small task. For example, her opposition to OhioHealth's motion was a staggering 540 pages, inclusive of exhibits, which is entirely too voluminous and completely inappropriate. (Doc. 81, #2524 (boasting that "[n]o Court has ever told [Wiltz] that [her] filings were … too voluminous")). And Wiltz's retort—that "[i]f [an] attorney believes that [her] filings are rambling, nonsensical, or too voluminous, [that attorney] always had (and still has) the option to choose not to read them or to respond to them," (*id.*)—is unprofessional and not well-taken. The Court therefore **FORMALLY WARNS** Wiltz that *any* attempt to either (1) relitigate any of the claims dismissed by this Opinion and Order, or (2) file yet another complaint based on frivolous allegations or that otherwise fails to state a claim upon which relief can be granted will result in her designation as a vexatious litigator in the federal courts.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' motions for judgment on the pleadings and motions to dismiss (Docs. 3, 6, 9, 16, 37, 40, 50, 84, 108) directed at Wiltz's Complaint (Docs. 1, 1-1, 1-2, 1-3), which the Court **DISMISSES WITH PREJUDICE** as against those Defendants.[17] The Court, however, **DENIES** OhioHealth's Motion for Judgment on the Pleadings as to the Counterclaim (Doc. 31). But the Court **WARNS** Wiltz that filing any new complaints that either attempt to relitigate the claims dismissed in this Opinion and Order, or that raise frivolous allegations or otherwise fail to state a claim will result in her designation as a vexatious litigator under federal law.

**SO ORDERED.**

June 16, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[17] While the Court could perhaps have dismissed some of the claims without prejudice, as the basis for dismissing those claims precludes suit in federal court but not state court (e.g., state sovereign immunity), the Court decides that is not the appropriate path here. That's because, as described above, Wiltz has already litigated in state court regarding the allegations she seeks to press here, and has already been deemed a vexatious litigator in state court (which prohibits her from "[i]nstituting legal proceedings" in Ohio courts, unless certain requirements are met, (Doc. 3-8, #268 (citing Ohio Rev. Code § 2323.52))). So the Court elects to dismiss all of the claims with prejudice.